.(44 Misc. Rep. 375.)

### PEOPLE ex rel. HAMMOND et al. v. BREEN et al.

(Supreme Court Chambers, Kings County. July, 1904.)

1. ARREST—VALIDITY.

> An inspector of police arrested 21 employés of a telegraph and telephone office where defendants collected the news as to horse races. Defendants and their instruments and books were taken to the police station, and kept there overnight. There was no evidence that the police had seen the prisoners do any criminal act. Held a violation of the constitutional right of liberty and property.

Application by the people, on the relation of George D. Hammond and others, for writs of habeas corpus and certiorari to Matthew P. Breen and others. Relators discharged.

Ira Leo Bamberger, for relators.
Edward Sanford, Asst. Dist. Atty., for defendants.

GAYNOR, J.. Inspector of Police Schmittberger and Captain of Police Hodgkins, with twenty policemen, came into the place where these five relators were employed in Park Row, Manhattan, and arrested them and sixteen other employés, and took them all to a station house

and locked them up.   They tore all of the telegraph and telephone instruments out of the place, and carried them to the station house with all of the books and papers found in the place.   The next morning the prisoners were brought before a magistrate, and he called upon the said police officials to make a complaint against them.   They could make no complaint of any criminal offence whatever.   They had seen the prisoners commit no criminal offence, and had no evidence whatever that they had committed any.   In fact, there was no criminal offence. Nevertheless the magistrate unlawfully held the prisoners until next day.   For this inadvertence on his part the prisoners' counsel seems to have been chiefly responsible.   No legal complaint of any criminal offence has since been made against the prisoners, and the learned assistant district attorney who appears before me admits that there is no evidence that they committed any.   The district attorney's office has in no way sanctioned the conduct of the police, but on the contrary has deprecated it.            ►

The police acted without a warrant.   Their acts were criminal lawlessness, pure and simple.   They could have been lawfully resisted to the last extremity.   They should be arrested and indicted for their acts. Where such police conduct prevails under a government of law, and not a despotism, law and order and free government are overthrown, trampled upon and debased.   Our government is one of laws and not of men, but such acts as these change it to one of men and unlawful force.   In England the unlawful arrest of the humblest individual creates a public protest which the government has to heed for its own safety.   There the educated and wealthy are the guardians and champions of the liberties of all.

The inspector of police was called upon to show his warrant when he invaded the place and was making the arrests and committing the other acts of criminal lawlessness; but his only response was that he was acting under the instructions of his superior.   It is alarming enough that an inspector or a captain of police, or even an ordinary policeman, should commit such a crime against law and order, and that free government which it took generations to establish against arbitrary force under a claim of divine right; but that a police commissioner selected and kept in office by the mayor of this great free city should order it to be done, is wholly incredible.   I do not credit it.   If it were so, then free government here would be wholly overthrown.

But such superior orders would not shield those who committed the lawless acts.   They could not confer any authority or give any immunity whatever.   The police force is not a military but a civil force, and its powers are most carefully limited by our laws.   A policeman cannot even be removed from his office for refusing to obey an order to commit a lawless act.   On the contrary, it is the official who gives such an order who subjects himself to removal.

The police officials say for their justification that the employer of the prisoners was engaged in the collection and distribution by telegraph and telephone of what is called sporting news, viz., of horse races.   But such a business is forbidden by no law.   There is no pretence that the relators or their employers were in the business of betting.   Do the police officials now assume to make laws?   Despotism once suffered to

get the least foothold grows rapidly; and almost 'before the community
are aware of it, it reaches its complete stage of usurping the three sepa-
rate government branches, executive, judicial and legislative, which
is despotism, pure and simple.  Little do people who make light of such
things know what they are doing.  And equally blind are those who say
that it is all right for a good mayor or a good police official to go be-
yond the laws.  Such so-called good officials are setting an example
for their bad successors to follow.  No official is good enough to be
suffered to transcend or overthrow our system of government.  Nor
should it be lost sight of for a moment that acts of police lawlessness
like those here disclosed are an effective means of extortion.  This we
all know from past experience.  Our laws and procedure for dealing
with all crimes are ample, and no official, high or low, is permitted to
violate them.  We have far more to fear from the growth of arbitrary
power in officials than from all the other vices and crimes combined.

The following words recently uttered by an eminent lawyer and
statesman may well be referred to in a judicial tribunal, viz.:

"There is one general characteristic of our system of government which
is essential and which is the special duty of lawyers to guard with care—
that is, the observance of the limitations of official power.  The more fre-
quently men who hold great power in office are permitted to override the
limitations imposed by law upon their powers, the more difficult it becomes
to question anything they do, and the people, each one weak in himself and
unable to cope with powerful officers who regard any questioning of their
acts as an affront, gradually lose the habit of holding such officers accounta-
ble, and ultimately practically surrender the right to hold them accountable."

In the recent Case of Farley (88 N. Y. Supp. 343), the Appellate Di-
vision of the Supreme Court in the First Judicial Department said of an
unlawful arrest which was trivial compared with the police lawlessness
disclosed in the present case, as follows:

"The action of the police officer in making the arrest, and of the magistrate
in holding the relator, deserve severe condemnation.  Their acts appear to
have been both illegal and arbitrary."

The relators are discharged.